## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

| | |
|---|---|
| AGNES MOMBRUN GETER, | Case No.: 8:26-cv-00433 |
| Plaintiff, | |
| v. | **JURY TRIAL DEMANDED** |
| EQUIFAX INFORMATION SERVICES, LLC and NAVIENT SOLUTIONS, LLC; | |
| Defendants. | |

## COMPLAINT

Agnes Mombrun Geter ("Plaintiff" or "Ms. Geter"), by and through the undersigned counsel, brings this action on an individual basis, against Equifax Information Services, LLC ("Defendant Equifax" or "Equifax") and Navient Solutions, LLC, ("Defendant Navient" or "Navient") (all defendants collectively, "Defendants"), and states as follows:

## INTRODUCTION

1.      The computerization of our society has resulted in a revolutionary increase in the accumulation and processing of data concerning individual American consumers. Data technology, whether it is used by businesses, banks, the Internal Revenue Service or other institutions, allows information concerning individual consumers to flow instantaneously to requesting parties. Such timely information is intended to lead to faster and better decision-making by its recipients and, in theory,

all of society should ultimately benefit from the resulting convenience and efficiency.

2.     However, unfortunately this information has also become readily available for, and subject to, mishandling and misuse. Individual consumers can and do sustain substantial damage, both economically and emotionally, whenever inaccurate or fraudulent information is disseminated and/or obtained about them. In fact, Defendant Equifax acknowledges this potential for misuse and resulting damage every time they sell their respective credit monitoring services to a consumer.

3.     The ongoing technological advances in the area of data processing have resulted in a boon for the companies that accumulate and sell data concerning individuals' credit histories and other personal information. Such companies are commonly known as consumer reporting agencies ("CRAs").

4.     These CRAs sell information to readily paying subscribers (i.e., retailers, landlords, lenders, potential employers, and other similar interested parties), commonly called "consumer reports," concerning individuals who may be applying for retail credit, housing, employment, or a car or mortgage loan.

5.     Since 1970, when Congress enacted the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA"), federal law has required CRAs to implement and utilize reasonable procedures "to assure maximum possible accuracy" of the

personal, private, and financial information that they compile and sell about individual consumers.

6.    One of the primary purposes in requiring CRAs to assure "maximum possible accuracy" of consumer information is to ensure the stability of our banking system:

> The banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system.

See 15 U.S.C. § 1681(a)(1).

7.    The preservation of one's good name and reputation is also at the heart of the FCRA's purposes:

> [W]ith the trend toward computerization of billings and the establishment of all sorts of computerized data banks, the individual is in great danger of having his life and character reduced to impersonal "blips" and key-punch holes in a stolid and unthinking machine which can literally ruin his reputation without cause, and make him unemployable or uninsurable, as well as deny him the opportunity to obtain a mortgage or buy a home. We are not nearly as much concerned over the possible mistaken turn-down of a consumer for a luxury item as we are over the possible destruction of his good name without his knowledge and without reason. Shakespeare said, the loss of one's good name is beyond price and makes one poor indeed.

*Bryant v. TRW, Inc.*, 689 F.2d 72, 79 (6th Cir. 1982) [quoting 116 cong. Rec. 36570 (1970)] (emphasis added).

8.    The FCRA also requires CRAs to conduct a reasonable reinvestigation to determine whether information disputed by consumers is inaccurate and record

the current status of the disputed information, or delete the disputed information, before the end of the 30-day period beginning on the date on which the CRA receives the notice of dispute from the consumer. This mandate exists to ensure that consumer disputes are handled in a timely manner and that inaccurate information contained within a consumer's credit report is corrected and/or deleted so as to not prevent said consumer from benefiting from his or her credit and obtaining new credit.

9.      In light of these important findings and purposes, Congress specifically noted "a need to insure that [CRAs] exercise their grave responsibilities with fairness, impartiality, and respect for the consumer's right to privacy." *See* 15 U. S.C. § 1681(a)(4).

10.     The FCRA also requires furnishers of information, a creditor or other third party that provides information about consumer to a CRA, upon notice, to conduct a reasonable reinvestigation of all disputes with regard to the completeness or accuracy of any information it provides to the CRAs regarding a consumer and modify, delete, or permanently block any items of information found to be inaccurate, incomplete, or unverifiable after said reinvestigation is completed.

11.     Plaintiff's claims arise out of Defendant Equifax's blatantly inaccurate credit reporting, wherein Equifax reported to Plaintiff's potential creditors that Plaintiff had an outstanding student loan balance after the student loans were discharged as part of a national class action against Navient.

12.    Accordingly, Plaintiff brings claims against Defendant Equifax for failing to follow reasonable procedures to assure the maximum possible accuracy of Plaintiffs credit reports, in violation of the FCRA, 15 U.S.C. § 1681e(b), and failing to conduct a reasonable reinvestigation to determine whether information Plaintiff disputed was inaccurate and record the current status of the disputed information, or delete the disputed information from Plaintiffs credit file, in violation of the FCRA, 15 U.S.C. § 1681i.

13.    Plaintiff also brings a claim against Defendant Navient for failing to fully and properly reinvestigate Plaintiff's disputes and review all relevant information provided by Plaintiff and Defendant Equifax, as well as the information in its own possession, in violation of the FCRA, 15 U.S.C. § 1681s-2(b)(1).

14.    As part of this action, Plaintiff seeks actual, statutory, and punitive damages, costs and attorneys' fees from Defendants for their willful and/or negligent violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq*., as described herein.

## PARTIES

15.    Agnes Mombrun Geter ("Plaintiff" or "Ms. Geter") is a natural person residing in Lakeland, Florida, and is a "consumer" as that term is defined in 15 U.S.C. § 1681a(c).

16.     Defendant Equifax Information Services, LLC. ("Defendant Equifax" or "Equifax") is a limited liability company with a principal place of business located at 1550 Peachtree Street, N.W., Atlanta, Georgia 30309, and is authorized to do business in the State of Florida, including within this District.

17.     Equifax is a "consumer reporting agency" as defined in 15 U.S.C. § 1681a(f). Equifax is regularly engaged in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d) to third parties.

18.     Defendant Navient Solutions, LLC, ("Navient") is a financial institution engaged in the business of servicing student loan debt with its headquarters in Virginia and is authorized to do business in the State of Florida, including within this District.

19.     Navient is a student loan servicer and "furnisher" of consumer information, as defined in 15 U.S.C. § 1681s-2(b).

## **JURISDICTION AND VENUE**

20.     This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p, which allows claims under the FCRA to be brought in any appropriate court of competent jurisdiction.

21.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## FACTS

### Summary of the Fair Credit Reporting Act

22.    The FCRA governs the conduct of consumer reporting agencies in an effort to preserve the integrity of the consumer banking system and to protect the rights of consumers to fairness and accuracy in the reporting of their credit information.

23.    The FCRA was designed to protect consumers from the harmful effects of inaccurate information reported in consumer reports (commonly referred to as "credit reports"). Thus, Congress enshrined the principles of "fair and accurate credit reporting" and the "need to ensure that consumer reporting agencies exercise their grave responsibilities with fairness" in the very first provision of the FCRA. *See* 15 U.S.C. § 1681(a).

24.    Specifically, the statute was intended to ensure that "consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information. *See* 15 U.S.C. § 1681(b).

25.     To that end, the FCRA imposes the following twin duties on consumer reporting agencies: (i) consumer reporting agencies must devise and implement reasonable procedures to ensure the "maximum possible accuracy" of information contained in consumer reports (15 U.S.C. § 1681e(b)); and (ii) consumer reporting agencies must reinvestigate the facts and circumstances surrounding a consumer's dispute and timely correct any inaccuracies (15 U.S.C. § 1681i).

26.     The FCRA provides consumers with a private right of action against consumer reporting agencies that willfully or negligently fail to comply with their statutory obligations under the FCRA.

## Factual Background

27.     The United States Congress has found that the banking system is dependent upon fair and accurate credit reporting.  Inaccurate consumer reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continual functioning of the banking system.

28.     Defendant Equifax sells millions of consumer reports (often called "credit reports" or "reports") per day,  and also sells credit scores.

29.     Pursuant to 15 U.S.C. § 1681e(b), consumer reporting agencies, like Defendant Equifax, are required "to follow reasonable procedures to assure

maximum possible accuracy of the information concerning the individual about whom the report relates."

30.    Pursuant to 15 U.S.C. §§ 1681b and 1681e(a), consumer reporting agencies, like Defendant Equifax, must maintain reasonable procedures to assure that consumer reports are sold only for legitimate "permissible purposes."

31.    Defendant Equifax's consumer reports generally contain the following information:

(a)    Header/Identifying Information: this section generally includes the consumer's name, current and prior addresses, date of birth, and phone numbers;

(b)    Tradeline Information: this section pertains to consumer credit history, and includes the type of credit account, credit limit or loan amount, account balance, payment history, and status;

(c)    Public Record Information: this section typically includes public record information, such as bankruptcy filings; and,

(d)    Credit Inquiries: this section lists every entity that has accessed the consumer's file through a "hard inquiry" (i.e., consumer-initiated activities, such as applications for credit cards, to rent an apartment, to open a deposit account, or for other services) or "soft inquiry" (i.e., user-initiated inquiries like prescreening).

32.    Defendant Equifax obtains consumer information from various sources. Some consumer information is sent directly to Defendant Equifax by furnishers.

33.    The majority of institutions that offer financial services (e.g., banks, creditors, and lenders) rely upon consumer reports from CRAs (like Defendant Equifax) to make lending decisions.

34.    Those institutions also use FICO Scores, and other proprietary third-party algorithms (or "scoring" models), including debt-to-income ratios, to interpret the information in a consumer's consumer report, which is based on the amount of reported debt, payment history, and date of delinquencies contained in Defendant Equifax's consumer reports.

35.    The information Defendant Equifax includes in a consumer report contributes to a consumer's overall creditworthiness and determines their FICO Scores.

36.    FICO Scores are calculated using information contained in Defendant Equifax's consumer reports.

37.    Defendant Equifax knows that FICO and other third-party algorithms (as well as the algorithms owned by CRAs) use variables or "attributes" derived from a consumer's consumer report to calculate a "credit score," which is a direct reflection of a consumer's creditworthiness.

38.     Defendant Equifax knows that lenders also consider a consumer's debt-to-income ratio (DTI) before deciding to extend credit or approve financing terms.

39.     DTI compares the total amount a consumer owes to the total amount a consumer earns.

40.     The higher the amount of reported debt that a consumer has, or appears to have, or is rather *reported* to have, the less favorable the consumer's DTI will be, and the more difficult it will be for a consumer to obtain credit and favorable credit terms. Rather, if offered credit at all, consumers will be offered less credit and at higher interest rates.

41.     Defendant Equifax routinely reports inaccurate and materially misleading information about consumers like Plaintiff, without verifying or updating it as required by Section 1681e(b) of the FCRA.

42.     Defendant Equifax fails to employ reasonable procedures to assure the maximum possible accuracy of the information that it reports about consumers, including but not limited to, account balances, account statuses, payment histories, and payment statuses.

43.     Consumers have filed thousands of lawsuits and FTC and Consumer Financial Protection Bureau Complaints against Defendant Equifax for its inaccurate credit reporting.

*Geter, Agnes Mombrun v. Equifax*
*Information Services, LLC et al*
Complaint

44.    Thus, Defendant Equifax is on continued notice of its inadequate reporting procedures.    Specifically, Defendant Equifax is on notice that its inadequate procedures regularly result in the reporting of inaccurate balances, account statuses, payment histories, and payment statuses.

45.    Defendant Equifax has received and documented many disputes from consumers complaining that Equifax reported inaccurate information about them.

**Plaintiff's Student Loan is Discharged**

46.    Plaintiff filed for Chapter 13 bankruptcy on September 17, 2012.

47.    On January 10, 2013, Plaintiff's bankruptcy was converted to Chapter 7 Bankruptcy.

48.    On May 2, 2013, Plaintiff's bankruptcy was discharged. However, at the time of Plaintiff's bankruptcy discharge, the Navient Account was not discharged.

49.    Accordingly, Plaintiff continued to make payments towards the Navient loans.

50.    Sometime in 2021, a consumer class action was filed against Defendant Navient. The class action plaintiff alleged that Navient had wrongfully continued to collect on private student loans that were dischargeable under § 523(a)(8) of the Bankruptcy Code.

51.    The student loan debts in question were Navient private student loans for education at institutions that were not recognized as eligible institutions under Title IV of the Higher Education Act and the Internal Revenue Code (i.e. "non-Title IV loans")." As such, the class action plaintiff contended that the non-Title IV student loans should have been discharged in bankruptcy, and all collection activity on such loans should have ceased upon discharge.

52.    On May 5, 2022, Defendant Navient notified Jean E. Mombrun ("Plaintiff's Father") that Plaintiff's Navient loan had been discharged in Plaintiff's bankruptcy, rendering her Father solely responsible for the balance and transferring the account into his name.

53.    On August 14, 2023, Defendant Navient sent a letter to Plaintiff informing her that she is a member of the class action lawsuit and as a result Plaintiff is entitled to relief.

54.    Specifically, Defendant Navient was required to refund Plaintiff the total amount of post-discharge payments she made to one of her student loans (the loan she incurred in conjunction with a Bar Prep program - Loan No. F088276227). Plaintiff was entitled to a refund for the post-discharge payments she made on the loan. The notice indicated that the full loan balance to date, $33,712.24, was discharged.

*Geter, Agnes Mombrun v. Equifax*
*Information Services, LLC et al*
Complaint

55.     On August 16, 2023, Plaintiff completed and returned the Class Notice and Claim Form

### Defendant Equifax Reports that Plaintiff Still Has a Balance Associated with Her Student Loan

56.     Sometime after having her student loans discharged and refunded, Plaintiff and her husband decided to purchase a home.

57.     In preparation for her application to purchase a home, Plaintiff obtained copies of her credit files from Defendant Equifax and non-parties Trans Union and Experian.

58.     Plaintiff reviewed the pertinent details in her credit report and learned that her student loan was still being reported as having an outstanding balance.

59.     Specifically, her student loan reported as Navient solutions with account number ending in *3017 was reported with a balance amount of $33,813.00.

60.     Plaintiff was confused and distressed by this information because her student loan had been discharged.

61.     Plaintiff no longer owed $33,813.00 and that balance amount should no longer have been reported after the student loan discharge.

62.     Worse still, by September 7, 2019, upon information and belief, the Navient Account, which was included in the bankruptcy and therefore would have been reporting adversely either, accurately, as discharged in bankruptcy or,

inaccurately, as having a balance became obsolete and no longer reportable because the Account's status antedated the report by seven (7) years.

63.    Accordingly, reporting the Account at all, either seven (7) years after it was included in bankruptcy, seven (7) years after it was placed in collections, or seven (7) years after the Account was discharged was a violation of the FCRA, 15 U.S.C. § 1681c(a)(4).

### Plaintiff's Dispute Regarding the Inaccurate Credit Reporting September 2025

64.    On or about September 6, 2025, extremely shocked, surprised, and embarrassed at Defendant Equifax's inaccurate reporting, Plaintiff disputed the inaccurate information that Plaintiff still had an outstanding balance associated with student loan serviced by Defendant Navient with Defendant Equifax.

65.    Plaintiff explained that her student loan had been discharged in bankruptcy, she no longer owed a balance, and any reporting suggesting she owed a balance on the student loan was inaccurate.

66.    Plaintiff requested that Defendant Equifax reinvestigate the disputed information, correct the reporting, and for each to send her a corrected copy of her credit report.

### Defendant Equifax's Unreasonable Dispute Reinvestigation

67.    Upon information and belief, Equifax sent Defendant Navient an automated credit dispute verification ("ACDV") pursuant to Plaintiff's September 14, 2025 dispute to Equifax.

68.    On or about September 14, 2025, Defendant Equifax responded to Plaintiff that the disputed balance amount was verified as accurate.

69.    Upon information and belief, Defendant Equifax failed to adequately review all of the information provided to it by Plaintiff in support of Plaintiff's dispute.

70.    Upon information and belief, Defendant Equifax failed to conduct a reasonable reinvestigation of Plaintiff's September 6, 2025 dispute.

71.    Thereafter, Defendant Equifax failed to correct or delete the balance amount in relation to the student loan reported in Plaintiff's credit file and reports.

72.    Equifax failed to conduct a reasonable reinvestigation of Plaintiff's dispute tendered on September 6, 2025, or any reinvestigation whatsoever, to determine whether the disputed information is inaccurate and record the current status of the disputed information, in violation of 15 U.S.C. § 1681i(a)(1)(A).

**Defendant's Method for Considering Consumer Credit Report Disputes**

73.    The credit industry has constructed a method of numeric-alpha codes for considering consumer credit report disputes. See 15 U.S.C. § 1681i(a)(5)(D).

74.    The credit bureaus, Equifax, Experian, Trans Union, and Innovis, have thus created the Online Solution for Complete and Accurate Reporting, or e-OSCAR, as the credit industries' standard of performance. e-OSCAR allows the credit bureaus to create and data furnishers to respond to disputes initiated by consumers by routing credit reporting agency-created prompts for automated consumer dispute verifications to the appropriate data furnishers. e-OSCAR utilizes a numeric-alpha language specific to the credit reporting industry.

75.    That lexicon or unique language is commonly referred to in the credit reporting industry as "Metro 2 Format" or "Metro 2."

76.    It is also known industry wide as the CDIA's "Credit Reporting Resource Guide."

77.    Metro 2 is driven by numeric codes that translate into specific alpha representations about consumers' creditworthiness and character that will ultimately appear on credit reports issued to third parties who make credit, insurance, rental, and employment decisions regarding consumers.

78.    Metro 2 codes are used on an industry wide form known within the credit industry as an Automated Consumer Dispute Verification ("ACDV") electronic form.

79.    The ACDVs have many fields in their body for use in effecting thorough and complete communications between data furnishers and the credit reporting agencies.

80.    These ACDV "fields" have various titles for the many substantive areas into which the Metro 2 codes can be entered.

81.    Upon receiving a dispute from a consumer, the credit bureaus have an automated system that prepares ACDVs that are sent to each of the data furnishers that are reporting the credit accounts disputed by a consumer.

82.    The data furnishers, like Defendant Navient, then have an obligation under the FCRA to conduct a reasonable reinvestigation with respect to the disputed credit account and review all relevant information provided by the consumer with the dispute to determine whether the disputed credit account information is accurate and/or belongs to the disputing consumer. See 15 U.S.C. § 1681s-2(b).

83.    Once the data furnisher completes its reinvestigation, it will code the ACDV accordingly, representing either that the disputed account was verified as accurate and belonging to the disputing consumer, updating information related to the account, or deleting the account entirely, and return the ACDV to the respective credit bureau(s) via e-OSCAR.

**Defendant Navient's Unreasonable Dispute Reinvestigation**

84.     Upon information and belief, on or about September 6, 2025, Defendant Navient received Defendant Equifax's ACDV and failed to conduct a reasonable investigation with respect to the information disputed by Plaintiff.

85.     Upon information and belief, Defendant Navient failed to review all relevant information provided by Defendant Equifax regarding Plaintiff's dispute tendered on or about September 6, 2025.

86.     Upon information and belief, Defendant Navient verified the disputed information as accurate to Defendant Equifax on or about September 6, 2025.

87.     Defendant Navient had already communicated with Plaintiff explaining that her student loan was discharged and yet, upon information and belief, responded to the ACDV from Equifax verifying false information.

88.     Defendant Navient violated 15 U.S.C. § 1681s-2b by failing to conduct a reasonable investigation with respect to the disputed information, failing to review all relevant information available to it, and failing to modify, delete, or permanently block the disputed information that was inaccurate, incomplete or unverifiable.

## Plaintiff Dispute to Defendant Equifax Regarding the Inaccurate Credit Reporting October 6, 2025

89.    As of October 2025, Defendant Equifax was still reporting that Plaintiff still had an outstanding balance on her student loan.

90.    On or about October 6, 2025, extremely shocked, surprised, and embarrassed at Defendant Equifax's inaccurate reporting, Plaintiff disputed the outstanding balance associated with her student loan with Defendant Equifax.

91.    Plaintiff explained that any notation that she still had an outstanding balance associated with her student loan was inaccurate.

92.    Plaintiff requested that Equifax reinvestigate the disputed information, correct the reporting, and for Defendant Equifax to send her a corrected copy of her credit report.

## Defendant Equifax's Unreasonable Reinvestigation

93.    Upon information and belief, Defendant Equifax sent Defendant Navient an automated credit dispute verification ("ACDV") pursuant to Plaintiff's October 6, 2025 dispute to Defendant Equifax.

94.    Upon information and belief, Defendant Equifax failed to adequately review all of the information provided to it by Plaintiff in support of Plaintiff's dispute.

95.    Upon information and belief, Defendant Equifax failed to conduct a reasonable reinvestigation of Plaintiff's October 6, 2025 dispute.

96.    Thereafter, Defendant Equifax failed to correct or delete the outstanding balance associated with Plaintiff's student loan appearing in Plaintiff's credit file.

97.    Defendant Equifax failed to conduct a reasonable reinvestigation of Plaintiff's dispute tendered on or about October 6, 2025, or any reinvestigation whatsoever, to determine whether the disputed information is inaccurate and record the current status of the disputed information, in violation of 15 U.S.C. § 1681i(a)(1)(A).

**Defendant Navient's Unreasonable Dispute Reinvestigation**

98.    Upon information and belief, on or about October 6, 2025, Defendant Navient received Defendant Equifax's ACDV and failed to conduct a reasonable investigation with respect to the information disputed by Plaintiff.

99.    Upon information and belief, Defendant Navient failed to review all relevant information provided by Defendant Equifax regarding Plaintiff's dispute tendered on or around October 6, 2025.

100.    Upon information and belief, on or about October 6, 2025, Defendant Navient verified the disputed information as accurate to Defendant Equifax.

101.    Just as before, Navient failed to update patently false information.

102.    Defendant Navient violated 15 U.S.C. § 1681s-2b by failing to conduct a reasonable investigation with respect to the disputed information, failing to review

all relevant information available to it, and failing to modify, delete, or permanently block the disputed information that was inaccurate, incomplete or unverifiable.

### Plaintiff's Dispute to Defendant Equifax Regarding the Inaccurate Credit Reporting October 9, 2025

103.    On or about October 9, 2025, extremely shocked, surprised, and embarrassed at Defendant Equifax's inaccurate reporting, Plaintiff once again disputed the outstanding balance associated with her student loan with Defendant Equifax.

104.    Plaintiff explained that any notation that she still had an outstanding balance associated with her student loan was inaccurate.

105.    Plaintiff requested that Equifax reinvestigate the disputed information, correct the reporting, and for Equifax to send her a corrected copy of her credit report.

### Defendant Equifax's Unreasonable Reinvestigation

106.    Upon information and belief, Defendant Equifax sent Defendant Navient an automated credit dispute verification ("ACDV") pursuant to Plaintiff's October 9, 2025 dispute to Defendant Equifax.

107.    Upon information and belief, Defendant Equifax failed to adequately review all of the information provided to it by Plaintiff in support of Plaintiff's dispute.

108.   Upon information and belief, Defendant Equifax failed to conduct a reasonable reinvestigation of Plaintiff's October 9, 2025 dispute.

109.   Thereafter, Defendant Equifax failed to correct or delete the outstanding balance associated with Plaintiff's student loan appearing in Plaintiff's credit file.

110.   Defendant Equifax failed to conduct a reasonable reinvestigation of Plaintiff's October 9, 2025 dispute, or any reinvestigation whatsoever, to determine whether the disputed information is inaccurate and record the current status of the disputed information, in violation of 15 U.S.C. § 1681i(a)(1)(A).

**Defendant Navient's Unreasonable Dispute Reinvestigation**

111.   Upon information and belief, on or about October 9, 2025, Defendant Navient received at least one ACDV from Defendant Equifax and failed to conduct a reasonable investigation with respect to the information disputed by Plaintiff.

112.   Upon information and belief, Defendant Navient failed to review all relevant information provided by Defendant Equifax regarding Plaintiff's dispute tendered on or about October 9, 2025.

113.   Upon information and belief, on at least one occasion on or about October 9, 2025, Defendant Navient verified the disputed information as accurate to Defendant Equifax.

114.   Defendant Navient violated 15 U.S.C. § 1681s-2b by failing to conduct a reasonable investigation with respect to the disputed information, failing to review all relevant information available to it, and failing to modify, delete, or permanently block the disputed information that was inaccurate, incomplete or unverifiable.

**Plaintiff's Dispute to Defendant Equifax Regarding the Inaccurate Credit Reporting October 25, 2025**

115.   On or about October 25, 2025, extremely shocked, surprised, and embarrassed at Defendant Equifax's inaccurate reporting, Plaintiff disputed the outstanding balance associated with her student loan with Defendant Equifax.

116.   Plaintiff explained that any notation that she still had an outstanding balance associated with her student loan was inaccurate.

117.   Plaintiff requested that Equifax reinvestigate the disputed information, correct the reporting, and for Equifax to send her a corrected copy of her credit report.

**Defendant Equifax's Unreasonable Reinvestigation**

118.   Upon information and belief, Defendant Equifax sent Defendant Navient an automated credit dispute verification ("ACDV") pursuant to Plaintiff's October 25, 2025 dispute to Defendant Equifax.

119.    Upon information and belief, Defendant Equifax failed to adequately review all of the information provided to it by Plaintiff in support of Plaintiff's dispute.

120.    Upon information and belief, Defendant Equifax failed to conduct a reasonable reinvestigation of Plaintiff's October 25, 2025 dispute.

121.    Thereafter, Defendant Equifax failed to correct or delete the outstanding balance associated with Plaintiff's student loan appearing in Plaintiff's credit file.

122.    Defendant Equifax failed to conduct a reasonable reinvestigation of Plaintiff's October 25, 2025 dispute, or any reinvestigation whatsoever, to determine whether the disputed information is inaccurate and record the current status of the disputed information, in violation of 15 U.S.C. § 1681i(a)(1)(A).

**Defendant Navient's Unreasonable Dispute Reinvestigation**

123.    Upon information and belief, on or about October 25, 2025, Defendant Navient received Defendant Equifax's ACDV and failed to conduct a reasonable investigation with respect to the information disputed by Plaintiff.

124.    Upon information and belief, Defendant Navient failed to review all relevant information provided by Defendant Equifax regarding Plaintiff's October 25, 2025 dispute.

125.   Upon information and belief, on or about October 25, 2025, Defendant Navient verified the disputed information as accurate to Defendant Equifax.

126.   Defendant Navient violated 15 U.S.C. § 1681s-2b by failing to conduct a reasonable investigation with respect to the disputed information, failing to review all relevant information available to it, and failing to modify, delete, or permanently block the disputed information that was inaccurate, incomplete or unverifiable.

**Plaintiff's Dispute to Defendant Equifax Regarding the Inaccurate Credit Reporting November 18, 2025**

127.   On or about November 18, 2025, extremely shocked, surprised, and embarrassed at Defendant Equifax's inaccurate reporting, Plaintiff disputed the outstanding balance associated with her student loan with Defendant Equifax.

128.   Plaintiff explained that any notation that she still had an outstanding balance associated with her student loan was inaccurate.

129.   Plaintiff requested that Equifax reinvestigate the disputed information, correct the reporting, and for Equifax to send her a corrected copy of her credit report.

**Defendant Equifax's Unreasonable Reinvestigation**

130.   Upon information and belief, Defendant Equifax sent Defendant Navient an automated credit dispute verification ("ACDV") pursuant to Plaintiff's November 18, 2025, dispute to Defendant Equifax.

131.   Upon information and belief, Defendant Equifax failed to adequately review all of the information provided to it by Plaintiff in support of Plaintiff's dispute.

132.   Upon information and belief, Defendant Equifax failed to conduct a reasonable reinvestigation of Plaintiff's November 18, 2025, dispute.

133.   Thereafter, Defendant Equifax failed to correct or delete the outstanding balance associated with Plaintiff's student loan appearing in Plaintiff's credit file.

134.   Defendant Equifax failed to conduct a reasonable reinvestigation of Plaintiff's November 18, 2025, dispute, or any reinvestigation whatsoever, to determine whether the disputed information is inaccurate and record the current status of the disputed information, in violation of 15 U.S.C. § 1681i(a)(1)(A).

**Defendant Navient's Unreasonable Dispute Reinvestigation**

135.   Upon information and belief, on or about November 18, 2025, Defendant Navient received Defendant Equifax's ACDV and failed to conduct a reasonable investigation with respect to the information disputed by Plaintiff.

136.   Upon information and belief, Defendant Navient failed to review all relevant information provided by Defendant Equifax regarding Plaintiff's November 18, 2025 dispute.

137.   Upon information and belief, on or about November 18, 2025, Defendant Navient verified the disputed information as accurate to Defendant Equifax.

138.   Defendant Navient violated 15 U.S.C. § 1681s-2b by failing to conduct a reasonable investigation with respect to the disputed information, failing to review all relevant information available to it, and failing to modify, delete, or permanently block the disputed information that was inaccurate, incomplete or unverifiable.

139.   Plaintiff reasonably believes that Defendant Navient continued to furnish data to Defendant Equifax inaccurately suggesting that Plaintiff still had an outstanding balance associated with her already discharged student loan. Navient did so despite receiving multiple disputes from Plaintiff via Defendant Equifax.

140.   Plaintiff reasonably believes that Defendant Equifax continued to publish that Plaintiff still had an outstanding balance associated with her already discharged student loan.

141.   As a result of the inaccurate reporting of the balance amount, and despite Plaintiff's student loan having been discharged, the Defendants made it practically impossible for Plaintiff to continue to obtain credit.

142.    At all times pertinent hereto, Defendants were acting by and through their agents, servants, and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of the Defendants herein.

143.    At all times pertinent hereto, the conduct of Defendants, as well as that of their respective agents, servants, and/or employees, was intentional, willful, reckless, grossly negligent and in utter disregard for federal law and the rights of Plaintiff herein.

144.    As a standard practice, Defendant Equifax does not conduct independent investigations in response to consumer disputes.  Instead, they merely parrot the response of the credit furnisher despite numerous court decisions admonishing this practice.  *See Cushman v. Trans Union Corp.*, 115 F.3d 220, 225 (3d Cir. 1997) (The 'grave responsibilit[y]' imposed by § 1681i(a) must consist of something more than merely parroting information received from other sources. Therefore, a 'reinvestigation' that merely shifts the burden back to the consumer and the credit grantor cannot fulfill the obligations contemplated by the statute."); *Apodaca v. Discover Fin. Servs.*, 417 F. Supp. 2d 1220, 1230-31 (D.N.M. 2006) (noting that credit reporting agencies may not rely on automated procedures that make only superficial inquiries once the consumer has notified it that information is

disputed); *Gorman v. Experian Info. Sols., Inc.*, 2008 WL 4934047, at *6 (S.D.N.Y. Nov. 19, 2008).

145.    Defendant Equifax is aware of the shortcomings of its procedures and intentionally chooses not to comply with the FCRA to lower its costs.  Accordingly, Defendant Equifax's violations of the FCRA are willful.

146.    After Plaintiff's bankruptcy discharge, on or about January 7, 2026, Plaintiff applied for pre-approval for a credit card with Capital One but was denied due to Defendant's inaccurate reporting.

147.    As a result of Defendants' conduct, action, and inaction, Plaintiff suffered damage by loss of credit; loss of ability to purchase and benefit from her good credit rating; detriment to her credit rating; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; the expenditure of labor and effort disputing and trying to correct the inaccurate credit reporting; and emotional distress including the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

## CLAIMS FOR RELIEF
### COUNT I
### 15 U.S.C. § 1681e(b)
### Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy
### (First Claim for Relief Against Defendant Equifax)

148.    Plaintiff re-alleges and incorporates by reference the allegations set forth in preceding paragraphs as if fully stated herein.

149.   The FCRA imposes a duty on consumer reporting agencies to devise and implement procedures to ensure the "maximum possible accuracy" of consumer reports, as follows:

> Whenever a consumer reporting agency prepares a consumer report, it shall follow reasonable procedures to assure **maximum possible accuracy** of the information concerning the individual about whom the report relates.

15 U.S.C. §1681e(b) (emphasis added).

150.   On numerous occasions, Defendant Equifax prepared patently false consumer reports concerning Plaintiff.

151.   Defendant Equifax readily sold such false reports to one or more third parties, thereby misrepresenting Plaintiff, and ultimately Plaintiff's creditworthiness.

152.   Defendant Equifax violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning Plaintiff.

153.   As a result of Defendant Equifax's conduct, action, and inaction, Plaintiff suffered damage by loss of credit; loss of ability to purchase and benefit from her good credit rating; detriment to her credit rating; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; the expenditure of labor and effort disputing and trying to correct the inaccurate credit

reporting; and emotional distress including the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

154.    Defendant Equifax's conduct, actions, and inactions were willful, rendering it liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.  Alternatively, they were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

155.    Plaintiff is entitled to recover attorneys' fees and costs from Defendant Equifax in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## COUNT II
## 15 U.S.C. § 1681i
### Failure to Perform a Reasonable Reinvestigation
### (Second Claim for Relief Against Defendant Equifax)

156.    Plaintiff re-alleges and incorporates by reference the allegations set forth in preceding paragraphs as if fully stated herein.

157.    The FCRA mandates that a CRA conducts an investigation of the accuracy of information "[I]f the completeness or accuracy of any item of information contained in a consumer's file" is disputed by the consumer.  *See* 15 U.S.C. § 1681i(a)(1).  The Act imposed a 30-day time limit for the completion of such an investigation. *Id*.

158.   The FCRA provides that if a CRA conducts an investigation of disputed information and confirms that the information is in fact inaccurate or is unable to verify the accuracy of the disputed information, the CRA is required to delete that item of information from the consumer's file.  *See* 15 U.S.C. § 1681i(a)(5)(A).

159.   On at least one occasion during the past two years, Plaintiff disputed the inaccurate information with Equifax and requested that they correct and/or delete a specific item in her credit file that is patently inaccurate, misleading, and highly damaging to her, namely, the balance amount associated with her already discharged student loan account ending in 3017.

160.   In response to Plaintiff's dispute, Equifax failed to conduct a reinvestigation, or such investigation was so shoddy as to allow patently false, logically inconsistent, and damaging information to remain in Plaintiff's credit file.

161.   Defendant Equifax violated 15 U.S.C. § 1681i by failing to conduct a reasonable reinvestigation to determine whether the disputed information was inaccurate and record the current status of the disputed information, or delete the disputed information, before the end of the 30-day period beginning on the date on which they received the notices of dispute from Plaintiff; and by failing to maintain reasonable procedures with which to filter and verify disputed information in Plaintiff's credit file.

162.   As a result of Defendant Equifax's conduct, action, and inaction, Plaintiff suffered damage by loss of credit; loss of ability to purchase and benefit from her good credit rating; detriment to her credit rating; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; the expenditure of labor and effort disputing and trying to correct the inaccurate credit reporting; and emotional distress including the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

163.   Defendant Equifax's conduct, actions, and inactions were willful, rendering it liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.  Alternatively, they were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

164.   Plaintiff is entitled to recover attorneys' fees and costs from Defendant Equifax in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## COUNT III
### 15 U.S.C. § 1681s-2(b)
### Failure to Conduct an Investigation of the Disputed Information and Review all Relevant Information Provided by the Consumer
### (Only Claim for Relief Against Defendant Navient)

165.   Plaintiff re-alleges and incorporates by reference the allegations set forth in preceding paragraphs as if fully stated herein.

166.   Defendant Navient furnished the inaccurate information relating to Plaintiff to the national credit bureaus, including but not limited to Equifax.

167.    Defendant Navient violated 15 U.S.C. § 1681s-2(b) by failing to investigate Plaintiff's dispute, or otherwise by failing to fully and properly investigate Plaintiff's dispute(s), including but not limited to failing to review all relevant information regarding the same; by failing to permanently and lawfully correct its own internal records to prevent the re-reporting of the inaccurate information relating to Plaintiff to the national credit bureaus, including but not limited to Equifax; and, by failing to cease furnishing inaccurate information relating to Plaintiff to the national credit bureaus, including but not limited to Equifax.

168.    As a result of Defendant Navient's conduct, action, and inaction, Plaintiff suffered damage by loss of credit; loss of ability to purchase and benefit from her good credit rating; detriment to her credit rating; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; the expenditure of labor and effort disputing and trying to correct the inaccurate credit reporting; and emotional distress including the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

169.    Defendant Navient's conduct, action, and inaction were willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.  Alternatively, they were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

*Geter, Agnes Mombrun v. Equifax*
*Information Services, LLC et al*
Complaint

170.   Plaintiff is entitled to recover attorneys' fees and costs from Defendant Navient in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays for the following relief:

i.   Determining that Defendants negligently and/or willfully violated the FCRA;

ii.   Awarding Plaintiff actual, statutory, and punitive damages as provided by the FCRA;

iii.   Awarding Plaintiff reasonable attorneys' fees and costs as provided by the FCRA; and,

iv.   Granting further relief, in law or equity, as this Court may deem appropriate and just.

## DEMAND FOR JURY TRIAL

Plaintiff is entitled to and hereby demands a trial by jury on all issues so triable.

RESPECTFULLY SUBMITTED this 17th day of February 2026.

*/s/ Austin Griffin*
Austin Griffin, FL #117740
CONSUMER JUSTICE LAW FIRM PLC
8095 N. 85th Way

*Geter, Agnes Mombrun v. Equifax Information Services, LLC et al*
Complaint

Scottsdale, AZ 85258
T: (305) 433-3252
F: (480) 613-7733
E: agriffin@consumerjustice.com

*Attorneys for Plaintiff,*
*Agnes Mombrun Geter*